IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISHA N. BRAITHWAITE, | No. CIV S-09-2922-CMK |
| Plaintiff, | |
| vs. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 24) and defendant's cross-motion for summary judgment (Doc. 28). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on April 20, 2007, alleging an onset of disability on December 20, 2005, due to physical impairments. (Certified administrative record ("CAR") 77, 81, 101-107, 113-121). Specifically, plaintiff claims disability based on impairments due to congestive heart failure, gout, hypertension, diabetes, and anemia. (CAR 114). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on December 4, 2008, before Administrative Law Judge ("ALJ") L. Kalei Fong. In an April 24, 2009, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1. The claimant has not engaged in substantial gainful activity since April 20, 2007, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe combination of impairments: Congestive heart failure, gout, hypertension, diabetes, anemia, and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)[3] however he must only occasionally climb ramps or stairs, never climb ladders or scaffolds, and can frequently balance, stoop, kneel, crouch and crawl.

[5]. The claimant is unable to perform any past relevant work (20 CFR 416.965).

[6]. The claimant was born on September 15, 1955 and was 51years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (20 CFR 416.963).

[7]. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

[8]. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[3] 20 C.F.R. § 404.1567(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

3

[9]. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

[10]. The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2007, the date the application was filed (20 CFR 416.920(g)).

CAR 8-17. After the Appeals Council declined review on August 20, 2009, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

///

## III.  DISCUSSION

Plaintiff argues the ALJ erred in several ways: (1) the ALJ improperly discounted the opinion of an examining physician; (2) the ALJ improperly discredited plaintiff's testimony; and (3) the ALJ improperly utilized the GRIDS instead of a vocational expert.

### A.   MEDICAL OPINION OF TREATING PHYSICIAN

Plaintiff contends the ALJ improperly accorded greater weight to the opinion of the non-examining agency physician, Dr. Lee, rather than the examining physician Dr. Garfinkel, without providing legally adequate reasons.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Here, the ALJ found:

> The findings of the State Agency as to the claimant's residual functional capacity are given great weight.  On August 1, 2007 the State Agency medical consultant, J.Y. Lee, M.D. found the claimant could perform light work, in that he could occasionally lift or carry 20 pounds, frequently 10 pounds and that he could stand, walk or sit about 6 hours in an 8 hour day.  Dr. Lee indicating the claimant could push or pull without limitations, occasionally climb ramps or stairs, never climb ladders or scaffolds, and frequently balance, stoop, kneel, crouch and crawl.  He found no manipulative, visual, communicative or environmental limitations (Exhibit 4F).
>
> Consulting examiner Joseph M. Garfinkel, M.D. found similar functional capacities to work after an examination of the claimant reporting on January 28, 2009.  He found however that he must periodically alternate standing and sitting every 2 hours to relieve pain or discomfort and that he could occasionally climb, balance, stoop, kneel, crouch or crawl.  Dr. Garfinkel indicated the claimant could reach overhead, handle, finger, feel and push/pull frequently, but only occasionally operate foot controls.  He concluded that the claimant had no visual, hearing limitations and could frequently be exposed to a variety of environmental conditions (Exhibit 12F and 13F).  To the degree the Dr. Garfinkel's assessment differs from those of Dr. Lee, greater weight is given to those of Dr. Lee.
>
> However, the assessment that the claimant have the opportunity every two hours to sit or stand to relieve pain and discomfort can be reasonably accommodated by the normal breaks of a working day, which essentially provides opportunity to change one's sitting,

> standing or walking movements every two hours within normal
> breaks and lunch time.  To follow Dr. Garfinkel's assessment does
> not significantly erode the occupational base for light work this
> decision is finding the claimant can perform.

(CAR 12-13).

Plaintiff argues the ALJ erred in not assessing him with the limitation Dr. Garfinkel assessed, that he needs to alternate between sitting and standing every two hours. He contends the ALJ's finding that normal breaks will accommodate plaintiff's need to alternate between sitting and standing is erroneous.

During the examination with Dr. Garfinkel, plaintiff reported a history of back pain since 1985, which was not work related. He stated it affects his joints, hands, back, and legs, that the pain radiates to his feet, and is worse with walking and sitting. (CAR 266). However, he did not appear to be on any type of pain mediation, other than aspirin and Indocin, an anti-inflammatory. (CAR 267). The examination of plaintiff appeared to be essentially normal. His range of motion was grossly normal in his neck and extremities, and only slightly limited in his back. ("Range of motion of the back is forward flexion to 80 degrees, lateral flexion and extension normal. Straight leg raising test is normal to 70 degrees bilaterally. There is no spasm in the paraspinal muscles of the neck or back.") (CAR 268-269). He had good motor tone and strength; his gait was within normal limits. (CAR 269). The clinical impression was: "1. Gouty arthritis; 2. Diabetes mellitus, type II; 3. Hypertension; 4. Coronary artery disease, status post MI, with coronary stent placed; and 5. Hyperlipidemia." Dr. Garfinkel's medical source statement was:

> The claimant can lift or carry 20 pounds occasionally and 10
> pounds frequently.  The claimant can stand or walk for 6 hours in
> an 8-hour day.  The claimant can sit for 6 hours in an 8-hour day.
> He can less than occasionally climb, kneel, or crouch.  He must
> periodically alternate standing and sitting every 2 hours to relieve
> pain or discomfort.  There are no manipulative, visual,
> communicative or environmental limitations.

(CAR 270).

/ / /

Prior to Dr. Garfinkel's consultative examination, Dr. Lee reviewed plaintiff's medical files and proffered an opinion as to plaintiff's abilities and limitations. (CAR 229-234). Dr. Lee noted plaintiff's primary diagnoses included coronary artery disease, hypertension, non-insulin-dependent diabetes mellitus, anemia, and Gout. Dr. Lee noted plaintiff was capable of lifting/carrying 20 pounds occasionally, 10 pounds frequently; standing and/or walking about 6 hours in an 8-hour workday; sitting for about 6 hours in an 8-hour workday; and otherwise unlimited ability to push and/or pull. Dr. Lee noted the lift/carry restrictions are due to plaintiff's coronary artery disease. (CAR 231). Dr. Lee also found plaintiff limited to climbing ramps/stairs only occasionally, and never ladder/rope/scaffolds; but plaintiff could frequently balance, stoop, kneel, crouch, and crawl. Dr. Lee found no other limitations.

Accordingly, while there is medical support for finding pain; the ALJ's determination that plaintiff's pain is not severe enough to warrant extensive breaks is supported by the medical evidence, and lack thereof. While Dr. Garfinkel stated plaintiff had the need to alternate position every two hours, Dr. Lee found no such limitation. It was for the ALJ to decide between the two slightly deferring opinions whether normal breaks were sufficient,[4] or whether an accommodation was required.

The ALJ found that plaintiff's need to alternate sitting or standing to relieve pain and discomfort could be accommodated by taking normal breaks during the work day. The ALJ stated normal breaks essentially provides workers an opportunity to change one's sitting, standing or walking movements every two hours. Thus, Dr. Garfinkel's assessment would not significancy erode the occupational base for light work. The ALJ supported this determination by citing to the limited treatment plaintiff has received, including that for his gout, and that the records seem to indicate the treatment plaintiff received adequately controlled his symptoms.

---

[4] The court agrees with defendant's argument that normal breaks occur every two hours during a normal 8-hour work day: one in the morning, lunch, and one in the afternoon. The fourth "break" would occur at the end of a normal workday. Plaintiff's argument that based on Dr. Garfinkel's assessment, he would require four breaks during an 8-hour day is not accurate.

The court finds this interpretation of the assessments by both Dr. Lee and Dr. Garfinkel is reasonable. Contrary to plaintiff's argument, the court finds the reasons provided by the ALJ in weighing the medical opinions were sufficient.

### B.  PLAINTIFF'S CREDIBILITY

Plaintiff further contends the ALJ did not set forth proper reasons for finding plaintiff's subjective complaints not credible. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ discussed plaintiff's medical treatment in some detail. In so doing, he also found plaintiff's testimony was not credible as to the intensity, persistence and limiting effects of his symptoms. The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant alleges he stopped working for reasons not related to the allegedly disabling impairment(s), to care for a relative.[5] It was about 4 months later upon having a heart attack that he went to a doctor and discovered his impairments (Exhibit 2E, page 2).

(CAR 11)

---

[5] In his Disability Report, plaintiff indicates he stopped working December 31, 2005, "to come help take [care] of a relative. Later, I visited the doctor & found out about the hypertension, diabetes, anemia, and the heart condition." (CAR 114).

The ALJ next notes that following a visit to the emergency room on April 19, 2006, where plaintiff was diagnosed with coronary artery disease, and a coronary stent placement, he was prescribed appropriate medication and was instructed in a proper diet. Plaintiff was then discharged with a medical follow-up plan. "There are no records of further acute hospital admissions for his coronary artery disease, hypertension nor diabetes mellitus, type II, leading to the inference that appropriate diet and medications are controlling his symptoms." (CAR 12). Similarly, during his April 8, 2007, hospitalization, where he was diagnosed with an acute gout flare-up, urinary tract infections, diabetes mellitus, type II with mild chronic renal insufficiency, and hypertension, he showed his impairments were manageable and had significant improvement during his hospital stay. Upon discharge, he received counseling regarding gout triggers, was provided prescriptions, and was advised to follow-up at the county clinic in a week. The ALJ again noted the absence of further records or hospitalization for gout "strongly suggests his symptoms are controllable with proper diet, exercise and the correct combination of medications." (CAR 12).

In addition, the ALJ noted plaintiff did not receive any:

> actual ongoing treatment for his alleged impairments. Other than the records for the two hospitalizations of April 2006 and April 2007, the claimant has not sought regular medical care. As those medical records evidence, the claimant apparently has no health insurance coverage, yet will seek low or no cost treatment from the county medical clinic, or the public hospital if needed. It also appears that his hospitalizations, for acute congestive heart failure – myocardial infarction and acute gout flare-up, led to a stabilization of his symptoms, successful treatment and discharge. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.
>
> The claimant has alleged that he has trouble concentrating. The record however is devoid of any efforts to seek treatment for emotional or mental problems that limit his ability to work and so this allegation is considered less than credible.

///

> The claimant also alleges trouble with severe fatigue, sometimes not going downstairs from his bedroom for the day due to this symptom. This allegation is not supported by the minimal objective findings, limited treatment sought, and the successful use of medication to control his symptoms.
>
> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(CAR 13).

Plaintiff argues the ALJ reasons for discrediting his testimony were insufficient. Specially, he contends that discrediting his testimony regarding his limited daily activities because his subjective complaints cannot be objectively verified is inappropriate. However, as the defendant points out, this is simply one of several reasons the ALJ provided in finding plaintiff's testimony to be less than credible. Thus, even if the court were to find this one reason was insufficient and even inappropriate, the ALJ provided several other reasons for discrediting plaintiff's testimony, which are sufficient and not challenged. Those other reasons, the lack of on-going medical treatment, that plaintiff's symptoms were well controlled, and the lack of a medical opinion supporting such extreme limitations, are all sufficient reasons supporting the ALJ's credibility determination. In addition, the ALJ found that even if plaintiff's daily activities were as limited as he claims, there is no support for attributing those limitations to plaintiff's medical condition.

The undersigned finds the reasons provided by the ALJ in finding plaintiff's testimony not credible are legally sufficient. The undersigned further finds that even if plaintiff's argument, that the ALJ erred in one of his reasons for finding him not credible, is accurate, that was only one of several reasons provided and the inclusion of one inappropriate reason for

discrediting plaintiff's testimony was harmless, especially in light of the other sufficient reasons provided. See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190 (9th Cir. 2004). Furthermore, while the ALJ's interpretation of plaintiff's testimony may not be the only reasonable one, it is still a reasonable interpretation and is supported by substantial evidence. Providing the ALJ's decision with the proper deference, the court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discrediting plaintiff's testimony.

### D.  GRIDS

Finally, plaintiff contends the ALJ improperly relied on the grids and should have obtained the testimony of a vocational expert. The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if the nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[6] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

---

[6] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
    Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.

13

other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

In cases where the grids are not fully applicable, the ALJ may meet his burden at step five of the analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Where the grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

In assigning error to the ALJ's failure to consult a vocational expert, plaintiff relies on his nonexertional limitations: chronic pain, fatigue, shortness of breath, and the need to lie down during the day, as he testified and as he argues is supported by the medical evidence. As discussed above, the ALJ properly discredited plaintiff's testimony as to his subjective limitations, and found little medical evidence supported such nonexertional limitations. In fact, there is no medical opinion supporting plaintiff's need to lie down during the day. At best, plaintiff was assessed with the need to alternate positions every two hours. In addition, substantial evidence supports the ALJ's finding that plaintiff can perform light work with some postural limitations,[7] but no other nonexertional limitations. (CAR 158-63, 187-90, 229-34, 235-36, 250, 266-79). As such, the ALJ properly applied grid rule 202.14 in finding plaintiff is not disabled, and did not err in failing to utilize a vocational expert's testimony.

///

---

404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

[7] The ALJ specifically found "[t]he minimal postural limitations in the established residual functional capacity constitute only a slight reduction that does not significantly erode the occupational base of light work. (SSR 83-12)." (CAR 15).

## IV.  CONCLUSION

Based on the foregoing, and utilizing the proper deferential standard of review, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 24) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 28) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 30, 2011

                                                    **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE